UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ADRIANO PIRES, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> STALLION EXPRESS, LLC <br><br> Defendant | Civ. A. No. |

# COLLECTIVE AND CLASS ACTION COMPLAINT

## INTRODUCTION

1. This is an action for independent contractor misclassification and related wage and hour claims brought by the plaintiff Adriano Pires on behalf of himself and all others similarly situated. Plaintiff has worked for the Defendant as a courier, transporting medicine from pharmacies to nursing facilities throughout Massachusetts.

2. The Plaintiff brings a collective action on behalf of all individuals who performed courier services in the United States for the Defendant for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, based on the Defendant's failure to pay minimum wage and overtime compensation.

3. The Plaintiff also brings class claims on behalf of all individuals who performed courier services in Massachusetts for the Defendant for violations of the Massachusetts Independent Contractor Statute, G.L. c. 149, § 148B, the Massachusetts Minimum Wage Act, G.L. c. 151, § 1, the Massachusetts Overtime Law, G.L. c. 151, § 1A, and the Massachusetts Wage Act, G.L. c. 149, § 148.

4. Plaintiff seeks to recover for himself, the Collective Class and the Massachusetts Class, all damages sustained as a result of the Defendant's misclassification of couriers as independent contractors, including treble and/or liquidated damages, interest, attorneys' fees and costs.

## JURISDICTION AND VENUE

5. This Court has general federal question jurisdiction pursuant to 28 U.S.C. § 1331, because the Plaintiff has brought a claim pursuant to the federal Fair Labor Standards Act, 29 U.S.C. 201 *et seq*. The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

6. Venue is proper in this Court because the events giving rise to this action took place within the district where Defendant does business, maintains a corporate presence, and has substantial contacts.

## PARTIES

7. Plaintiff Adriano Pires is a citizen of Rhode Island. He worked for Stallion as a courier from approximately November 2019 until August 2022.

8. Defendant Stallion Express, LLC ("Stallion Express") is a foreign limited liability company. It conducts substantial business throughout Massachusetts.

## FACTUALCOLLECTIVE AND CLASS ALLEGATIONS

9. According to its website, Stallion Express "provide[s] pharmaceutical courier services that help pharmacies throughout the U.S. increase their bottom line profits and improve patient care."

10. According to its website, Stallion Express offers same-day delivery services, on-demand STAT delivery services, medical supply delivery services, lab work delivery services, med cart delivery services, and wholesale distribution services.

11. Stallion Express operates throughout the United States, including but not limited to in Massachusetts, New Hampshire, Rhode Island, New York, New Jersey, Maryland, Connecticut, Tennessee, Ohio, Indiana, Iowa, Illinois, Florida, and Missouri.

12. Stallion's Couriers, as a class of workers, are transportation workers.

13. That class of workers e (i.e., Stallion's couriers) delivers products in interstate commerce every day.

14. For a period of time during his tenure with Stallion, the Plaintiff regularly picked up pharmaceutical products in Massachusetts and delivered them in Massachusetts, New Hampshire and Rhode Island.

15. For more or less the entire duration of his tenure with Stallion, the Plaintiff ran a so-called double route.

16. It was a regular occurrence (generally at least one or more times per week) that Plaintiff was required to bring pharmaceutical products back to Stallion's pharmacy customer located in Massachusetts that were being returned by customers who were on the first of the Plaintiff's daily double-route.

17. Knowing that the Plaintiff would be returning to the Massachusetts pharmacy location for his second daily route, Stallion regularly instructed the Plaintiff to transport and store the product to be returned at the Plaintiff's residence in Rhode Island until he returned to the pharmacy in Massachusetts for his second route of the day. As a result, the Plaintiff regularly transported pharmaceutical products for Stallion between Massachusetts and Rhode Island.

18. Stallion Express exercises substantial control over the Plaintiff, Collective Class, and Massachusetts Class ("Couriers").

19. Couriers are required to submit to background checks by Stallion Express.

20. Couriers are required to submit proof of a valid state issued driver's license to Stallion Express.

21. Couriers are required by Stallion Express to submit to drug screening.

22. Couriers are required to produce to Stallion Express evidence of auto liability insurance.

23. Couriers are prohibited by Stallion Express from having an auto liability insurance policy that excludes coverage for the nature of services that the Courier performs for Stallion Express.

24. Couriers are required by Stallion Express to have an auto liability insurance policy that provides at least 30 days' notice of termination prior to the policy being terminated.

25. Couriers are required, in the event that they do not maintain their own cargo loss/damage insurance, to pay the entire deducible amount for any coverage that Stallion Express maintains that covers the incident.

26. Couriers are required by Stallion Express to maintain workplace accident insurance.

27. Couriers are required by Stallion Express to have a mobile device with its own active data plan to utilize certain applications that they must download.

28. Specifically, Stallion Express Couriers are required to utilize the applications eCMobile (E-Courier) and Mediprocity.

29. These applications allow Stallion Express to record and track every detail of the Courier's day-to-day work, and to be in immediate and constant communication with the Couriers.

30. When a Courier arrives at the pharmacy, they are required to log into E-Courier and scan the Arrive Location barcode which immediately informs Stallion Express that the Courier is at the pharmacy.

31. Couriers are then required to scan the barcode on each item they pick up into the E-Courier system so that they can be tracked by Stallion Express.

32. Couriers are then required to enter and send an inventory count via Mediprocity, a messaging application, to Stallion Express's central dispatch.

33. Couriers are required to input the foregoing information before loading their vehicle.

34. When a Courier arrives at the delivery location, the Courier is then required by Stallion Express to scan the product and have the receiver (typically a nurse) sign the packing slip.

35. In the event of an issue with a delivery, such as a faulty bar code or refusal/return by the customer, the Courier is required by Stallion Express to post photos of the medication and packing slip into Mediprocity, and enter the reason for the return, facility name, and nurse's name and photograph into Mediprocity.

36. Couriers are required by Stallion Express to collect any returns and to accurately record all relevant information into E-Courier.

37. If the item being returned was delivered that day (in other words not accepted by the nursing home), the Courier is required to return it the same day to the pharmacy, and to promptly inform Stallion Express Central Dispatch in Mediprocity of the exact time the Courier is returning the product to the pharmacy.

38. Couriers receive no compensation for the time spent returning product to pharmacies despite being required to do so.

39. When the Courier completes their route for the day, the Courier is required to log the completion of their route in E-Courier.

40. After finishing their route, Couriers are required by Stallion Express to return all packing slips to the pharmacy and to immediately refrigerate any cold chain returns.

41. Stallion Express reserves the right to terminate any Courier at any time for any reason.

42. Stallion Express requires Couriers to wear Stallion Express apparel which Couriers are required to pay for.

43. If a Stallion Express Courier arrives at the pharmacy without Stallion Express apparel, the Courier is given a Stallion Express shirt and then subsequently billed for it.

44. Stallion Express Couriers are required to have a Stallion Express photo identification badge on them at all times.

45. Couriers are required to submit to Stallion Express all shipping related documents to allow Stallion Express to bill its customers.

46. Stallion Express tracks all Couriers via GPS.

47. If it appears, based on Stallion Express's tracking of the Courier, that the Court is not going to arrive at a delivery on-time, Stallion Express dispatchers repeatedly contact the Courier.

48. Stallion Express is in constant communication with its Couriers through Mediprocity on a daily basis.

49. Stallion Express instructs its Couriers to arrive a specific pharmacy each day by a set a time.

50. Stallion Express Couriers are regularly instructed by Stallion Express to wait, often times for multiple hours, at pharmacy reporting locations without any additional compensation.

51. Stallion Express Couriers have no significant opportunity for profit or loss.

52. Couriers are not permitted to negotiate prices with Stallion Express customers.

53. Couriers are not permitted to bill or invoice Stallion Express customers.

54. Couriers are not permitted to collect payment from Stallion Express customers.

55. Couriers have no actual customers of their own.

56. If a Courier believes they have not been paid properly by Stallion Express, the Courier is given 72 hours to contest the payment. If the Courier does not contest the payment within 72 hours, Stallion Express will not review the Courier's complaint.

57. Couriers are offered delivery routes by Stallion Express that Couriers have no meaningful opportunity to negotiate.

58. Specifically, all Couriers' compensation structure with Stallion Express in substantially the same. That is, all Couriers are paid a certain amount per mile for transportation-related expenses plus an additional amount per delivery.

59. Couriers are also subject to the same deductions that Stallion Express deducts from their compensation, including a tech fee, motor carrier authority fee, and IC program fee.

60. When factoring out the compensation that Couriers receive based on their mileage driven, which is to compensate Couriers for their transportation-related costs, all Couriers, including the Plaintiff are paid substantially below the minimum wage for the hours that they work.

61. Stallion Express will also instruct the Courier as to precise order of deliveries that they are required to follow on their route. A Courier may not deviate from the route order, even if they deem it beneficial to him or her, without permission from Stallion Express.

62. Stallion Express will also regularly add additional stops to Courier's routes with little to no notice, and without any additional compensation.

63. Couriers who fail to accept a route or final compensation offer as dictated by Stallion Express are regularly terminated by Stallion Express.

64. Little to no skill is required to become a Courier for Stallion Express.

65. Stallion Express runs job advertisements for Couriers in multiple states around the country that are substantially identical. The job posting state the only thing a person needs to

become a Courier is a valid driver's license, vehicle insurance and registration, a smartphone, and a reliable fuel-efficient vehicle.

66. Couriers work for Stallion express for indefinite, undefined duration.

67. In the Plaintiff's case, he worked full time as a Courier for Stallion Express from approximately November 2019 to August 2022.

68. Stallion Express Couriers, including the Plaintiff regularly work over 40 hours per work week.

69. Stallion Express Couriers, including the Plaintiff do not receive overtime compensation for the hours they work over 40 in a workweek.

70. The Couriers are integral to Stallion Express's business.

71. Without the Couriers, Stallion Express's business could not function.

72. Stallion Express Couriers are not customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service they perform for Stallion Express.

## COLLECTIVE ACTION ALLEGATIONS

73. Pursuant to 29 U.S.C. § 216(b), Plaintiff brings unpaid minimum wage and overtime claims due under the FLSA on behalf of all similarly situated individuals who may choose to "opt-in" to this action.

74. The claim meets the requirements for collective action certification under the FLSA.

75. All potential opt-in plaintiffs are similarly situated, as Stallion Express's policy and practice of classifying all installers as independent contractors and not paying them minimum wage and overtime compensation was applicable to all Couriers throughout the United States and resulted in a violation of the FLSA.

**CLASS ACTION ALLEGATIONS**

76. Pursuant to G.L. c. 149, § 150, G.L. c. 151, § 1B, and Fed. R. Civ. P. 23, Plaintiff brings this action on behalf of herself and all other similarly situated Massachusetts-based Couriers who have worked for Stallion Express

77. Joinder is impracticable due to the size and composition of the class, and the nature of the claims and relief sought, the remedial purpose of the underlying claims, and because individual joinder would be inefficient, uneconomical, and could result in the deprivation of wage rights to aggrieved employees.

78. There are issues of law and fact common to all class members, including whether the Defendant misclassified the Plaintiff and class as independent contractors. This common question predominates over any questions affecting individual class members.

79. The Plaintiff's claims are typical of the claims of all members of the class, because all members of the class were subject to the same unlawful practices and suffered similar harms.

80. Plaintiff will fairly and adequately represent the interests of the class because he does not have a conflict of interest with the class members. Plaintiff's counsel will fairly and adequately represent the class members' interests because they have substantial experience in this field.

81. A class action is superior in this case for several reasons, including but not limited to the following: this case challenges the Defendant's uniform employment classification and payment practices; many workers may be reluctant to bring claims individually for fear of retaliation; some class members may not have the resources to bring their claims individually; and it would be an inefficient use of scare judicial resources to require each individual affected by the practices challenged herein to bring his or her own individual claims.

## CAUSES OF ACTION

### COUNT I
### Violation of the Fair Labor Standards Act

82. Stallion Express's knowing and willful failure to properly pay minimum wage and time-and-a-half for hours worked more than forty (40) in a workweek to the Plaintiff and Collective Class based on their misclassification as "independent contractors" violates the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*.

### COUNT II
### Misclassification, G.L. c. 149,§ 148B

83. Stallion Express has misclassified the Plaintiff and Massachusetts Class as independent contractors in violation of G.L. c 149, § 148B. For this violation, Plaintiff and the Massachusetts Class are entitled to recover the wages and benefits they would have received as employees, including reimbursement for any business-related expenses they were required to bear as a result of their misclassification as independent contractors. This claim is brought pursuant to G.L. c. 149, § 150.

### COUNT III
### Massachusetts Overtime Law, G.L. c. 151, § 1

84. Stallion Express's failure to properly pay minimum wage for all hours worked to the Plaintiff and Massachusetts Class based on their misclassification as "independent contractors" violates the Massachusetts Minimum Wage Law, M.G.L. c. 151, § 1

### COUNT IV
### Massachusetts Overtime Law, G.L. c. 151, § 1A

85. Stallion Express's failure to properly pay time-and-a-half for hours worked more than forty (40) in a workweek to the Plaintiff and Massachusetts Class based on their misclassification as "independent contractors" violates the Massachusetts Overtime Law, G.L. c. 151, § 1A

## COUNT V
## Massachusetts Wage Act, G.L. c. 149, § 148

86. Stallion Express's failure to properly pay the Plaintiff and Massachusetts Class all wages and benefits that they would have received had Defendant properly classified them as employees violates the Massachusetts Wage Act, G.L. c. 149, § 148.

## JURY DEMAND

The Plaintiff requests a trial by jury on all claims.

**WHEREFORE**, the Plaintiff seeks judgment against the Defendant as follows:

1. An order conditionally certifying a class of similarly situated individuals under the FLSA and directing the issuance of notice informing affected individuals of their right to opt-in to this action. With respect to the claim under the FLSA, Plaintiff seeks certification of a collective class that includes all persons who worked as Couriers for Stallion Express during the relevant limitations period.

2. A finding that Stallion Express's violations under the FLSA were willful and knowing, and therefore subject to a three-year statute of limitations.

3. With respect to the class claims under Massachusetts law, certification of this case as a class action, or recognition that this case is properly brought on behalf of all similarly situated employees, pursuant to Fed. R. Civ. P. 23, M.G.L. c. 149, § 150, and M.G.L. c. 151, § 20. With respect to all claims under Massachusetts law, Plaintiff seeks certification of a class that includes all persons who performed installations in Massachusetts during the relevant limitations period.

4. All damages to which Plaintiff, Massachusetts Class and Collective Class is entitled pursuant to Massachusetts or federal law.

5. Liquidated damages, pursuant to federal law.

6. Statutory trebling of damages, pursuant to Massachusetts law.

7. Attorneys' fees, costs, and interest as allowed by law.

8. Such other relief as the Court may deem proper and just.


Plaintiff,
Adriano Pires, individually & on behalf of
all others similarly situated

By his attorney,

/s/ Adam J. Shafran
Adam J. Shafran, BBO#670460
Rudolph Friedmann LLP
92 State Street
Boston, MA 02109
617-723-7700
617-227-0313 (fax)